**Beckermeyer v. AT&T Wireless**

*Mark R. Cuker,* for plaintiff.
*Walter H. Swayze,* for defendant Panasonic.
*Mary Catherine Roper,* for defendant AT&T.

JONES II, *J.,* October 22, 2004—Presently before the court are the preliminary objections of defendants AT&T Wireless Services Inc. (misidentified as AT&T Wireless) and Panasonic Telecommunications Systems Company (misidentified as Panasonic Telecommunications Company, division of Matsushita Electric Corporation of America) to the fourth amended class action complaint (misidentified as the third amended class action complaint) of plaintiff Brandon Beckermeyer. For the reasons stated below, the preliminary objections are sustained in part and overruled in part.

## BACKGROUND

According to the complaint, on August 21, 2001, plaintiff purchased a Panasonic Duramax cellular phone designed by Panasonic. Plaintiff made his purchase for $225 via the internet from Nationwide Wireless, who was an authorized agent of AT&T at the time of the sale. Prior to the purchase of the phone, plaintiff advised Nationwide Wireless that he did not intend to purchase wireless service from AT&T, but was not advised the phone would only work on AT&T's network.

AT&T, and certain other wireless carriers, use a technology called time division multiple access (TDMA) to broadcast their wireless signals. The user of a TDMA cellular phone determines which TDMA-based carrier's network to use. To direct a cellular phone to use a particular carrier's network, the cellular phone's system operator code (SOC) must be programmed to work on that network. A cellular phone that is sold to work on one TDMA network can be programmed to work on the network of another TDMA-based carrier by changing the SOC. For example, a Nokia TDMA cellular phone originally used on the Cingular wireless network can be programmed to work on AT&T's network by entering codes on its keypad to change the SOC.

The phone was delivered to plaintiff in an AT&T box with an AT&T sticker and, when initially turned on, read AT&T Wireless. Plaintiff attempted to program the phone for another TDMA-based carrier by changing the SOC, but failed because the SOC was locked. Neither defendant disclosed the locking of the SOC to plaintiff. The locking of the SOC is neither integral nor essential to the use of the phone on AT&T's wireless network.

Plaintiff contacted both AT&T and Panasonic to learn how to disable the SOC lock, but was informed that the phone was sold in such a manner that it could not be reprogrammed to work on another TDMA carrier's network. Both defendants also refused to refund plaintiff's money for the phone. Thereafter, plaintiff signed up with AT&T for wireless service, but became disenchanted with its quality and discontinued his service. He paid a termination fee in connection with this process.

Plaintiff has brought this complaint as a class action. He alleges violations of the Magnuson Moss Warranty Act (Count I, misidentified as Count II), breaches of warranty (Count II), and violations of the Pennsylvania Unfair Trade and Consumer Protection Act (Count III). Plaintiff seeks damages and a disclaimer warning consumers that the phone cannot be used on other wireless carrier's networks.

## DISCUSSION

Defendants have raised Preliminary Objections to each count of the complaint in the nature of a demurrer. In this posture, the court considers all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer is sustained, this doubt should be resolved in favor of overruling it. See *Moser v. Heistand,* 545 Pa. 554, 559, 681 A.2d 1322, 1325 (1996).

In my previous order of December 3, 2003, each count of plaintiff's prior complaint was dismissed and the plain-

tiff was granted leave to amend for "claims under the Magnuson Moss Warranty Act relating to anti-tying and warranty form violations." Although plaintiff has disregarded this order by bringing all his previously dismissed claims, he has alleged certain new facts that, in essence, change the phone. In plaintiff's prior complaint, he alleged problems with an AT&T phone. In this complaint, he alleges difficulties with a TDMA phone. Nonetheless, this change does not breathe new life into the claims for breach of express warranty, breach of the warranty of fitness for a particular purpose, or violation of the Pennsylvania Unfair Trade and Consumer Protection Act. Therefore, defendants' objections to Count II as applied to the claims for breach of express warranty and breach of the warranty of fitness for a particular purpose are sustained and this count is dismissed in part and defendants' objections to Count III are sustained and this count is dismissed.

In Pennsylvania, the elements of the implied warranty of merchantability are defined by statute. See 13 Pa.C.S. §2314. Plaintiff questions whether the phone complies with the requirement that the relevant goods are "fit for the ordinary purposes for which such goods are used." 13 Pa.C.S. §2314(b)(3). The "ordinary purpose" of a TDMA cellular phone is the use of that cellular phone on TDMA networks.[1] Whether such usage may be confined to a particular network cannot be determined at

---

1. Plaintiff did not establish a violation of this warranty in his prior complaints because he did not allege that a TDMA cellular phone worked on any TDMA network and that the cellular phone user determined which network the cellular phone used for service.

this stage. Contrary to defendants' representations, whether a product is defective is not central to a claim for breach of the implied warranty of merchantability. See *Gall v. Allegheny County Health Department,* 521 Pa. 68, 75, 555 A.2d 786, 789-90 (1989) (explaining merchantability). Defendants' objections to Count II as applied to the implied warranty of merchantability are overruled.

Plaintiff alleges a violation of the disclosure requirements of the Magnuson Moss Warranty Act, 15 U.S.C. §2301 et seq. Under the Warranty Act, a warrantor must conform the terms of any written warranty to those promulgated by the Federal Trade Commission. See 15 U.S.C. §2302(a). According to the FTC, a warranty "shall clearly and conspicuously disclose in a single document in simple and readily understood language" certain items, including the description and identification of the products, parts, characteristics, components, or properties excluded from the warranty. 16 C.F.R. §701.3. A "property" of the phone is its ability to connect to TDMA-based networks. Plaintiff determined that the phone is blocked from accessing TDMA-based networks other than AT&T's. The provision in the contract (the AT&T "Welcome Guide") indicating that the phone could not be used on a different wireless carrier's network is not in the same document as the remainder of the warranty. Splitting the warranty between two documents violates the "single document rule" central to the Warranty Act's disclosure requirements. See *Cunningham v. Fleetwood Homes of Ga. Inc.,* 253 F.3d 611, 621 (11th Cir. 2001). Therefore, defendants' objection to Count I with respect to 15 U.S.C. §2302(a) is overruled.

Plaintiff asserts that defendants violated the "tying" provisions of the Warranty Act. The Warranty Act prevents a warrantor from conditioning warranty coverage of its product on the consumer's use, in connection with the product, of any article or service identified by brand, trade, or corporate name. See 15 U.S.C. §2302(c). In this instance, the phone worked on AT&T's network. Defendants made the SOC unalterable by the consumer and refused to assist plaintiff in reprogramming the SOC. These acts prevented the phone from being used on another TDMA-based wireless carrier's network. Essentially, the "ordinary purpose" component of the implied warranty of merchantability was met only when the phone connected to AT&T's network. This connection of the warranty to a branded service violates the Warranty Act. Therefore, defendants' objection to Count I as applied to 15 U.S.C. §2302(c) is overruled.

Plaintiff alleges that defendants violated the Act by placing an unconscionable time restriction on the implied warranties connected to the phone. The Warranty Act permits an implied warranty to be limited in duration to the same period as the written warranty as long as the limitation is conscionable and clearly set forth. See 15 U.S.C. §2308. Determination of the reasonableness of the durational period is a matter of law. See *Bush v. American Motors Sales Corp.*, 575 F. Supp. 1581, 1583 (D. Col. 1984). A one-year period is neither unreasonable nor unconscionable, and plaintiff sets forth no facts to the contrary. Furthermore, plaintiff brought this action less than one year after purchasing the phone and can show no harm pursuant to this section of the Warranty Act. Therefore, defendants' objection to Count I with respect to 15 U.S.C. §2308 is sustained.

In addition to asserting that plaintiff failed to provide sufficient factual allegations to establish his claims, defendants also argue that the claims are preempted by federal law. As amended, the Communications Act of 1934, 47 U.S.C. §151 et seq., establishes the regulatory scheme governing wireless communications. Defendants put forward three different theories of preemption—express, field and conflict—to support their position that the federal scheme bars plaintiff's claims. None is convincing.

The starting point for a preemption analysis is ascertaining the construction of the two laws and then determining whether they are in conflict. See *Chicago & N. W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317 (1981). The relevant laws need not be statutes. See *Shulick v. PaineWebber Inc.,* 554 Pa. 524, 528-29, 722 A.2d 148, 150-51 (1998).

Express preemption invalidates state laws that are contrary to an explicit federal provision. See *Gibbons v. Ogden,* 22 U.S. 1, 211 (1824). The Communications Act provides that "no state or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a state from regulating the other terms and conditions of commercial mobile services." 47 U.S.C. §332(c)(3)(A). Thus plaintiff's claims would be barred if the complaint sought to regulate market entry or rates. The complaint makes no mention of market entry or rates. Instead, the complaint asserts that defendants did not adequately disclose the phone's limitations in violation of the Warranty Act and Pennsylvania consumer protection laws. These claims address the "other terms and conditions of com-

mercial mobile services," which are expressly reserved for the states.

Turning to the remedies sought by plaintiff does not change the outcome under this analysis. As an initial matter, the Communications Act provides that "[n]othing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." 47 U.S.C. §414. Consistent with this provision, plaintiff seeks damages and informational disclosure. Certainly, any award in plaintiff's favor "is likely to impact rates and the manner in which services are delivered, but this indirect result does not convert such challenges into a direct challenge to rates and market entry contemplated by the preemptive language of the statute." *Moriconi v. AT&T Wireless PCS, LLC,* 280 F. Supp.2d 867, 876 (E.D. Ark. 2003). To hold otherwise would exempt companies involved in wireless communications from every state law, regulation, or court order that impacted their bottom line, which contravenes the plain language of 47 U.S.C. §332(c)(3)(A). The chief regulator in this area, the Federal Communications Commission (FCC), recognizes that wireless communications companies may be "subject to damages for a non-disclosure or false advertising claim under applicable state law if it misrepresents what those rates are or how they will apply, or if it fails to inform consumers of other material terms, conditions, or limitations on the service it is providing." *Wireless Consumers Alliance Inc.,* 15 F.C.C.R. 17021, ¶27 (2000). The complaint makes allegations analogous to these parameters. Defendants' express preemption arguments fail.

As implied forms of preemption, neither field nor conflict preemption relies upon a direct statutory or regulatory provision. Instead, these forms of preemption examine whether the challenged state regulation would interfere with the federal regulatory scheme. Field preemption blocks state laws in those instances in which the federal regulatory scheme is so pervasive as to make reasonable the inference that there is no room for state supplementation. See *Fidelity Federal Savings & Loan Association v. De La Cuesta,* 458 U.S. 141, 153 (1982). Conflict preemption arises when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. See *International Paper Co. v. Ouellette,* 479 U.S. 481, 492 (1987). The "other terms and conditions" clause makes clear that the federal regulatory scheme leaves room for state regulation of the wireless communication industry that does not directly impact market entry or rates.

To overcome the limits to federal power in the wireless communications area, defendants attempt to recast plaintiff's claims into ones within the scope of federal responsibility. The basis of defendants' implied preemption arguments is that the plaintiff seeks to modify the technical standards set forth by Congress and the FCC. See defendant AT&T's memorandum of law in support of preliminary objections at 21 ("There can be no doubt that the federal government has occupied the field of regulation of the technical and system performance standards for wireless phone service and equipment."), 25 ("The federal goals of uniformity and technological flexibility would be destroyed by state-by-state regulation of technological requirements for wireless phones."). If true, plaintiff's claims would be preempted. See *An In-*

*quiry Into the Use of the Bands 825-845 MHz and 870-890 MHz for Cellular Communications Systems,* 86 F.C.C.2d 469 (1981) (adopting technical standards). This premise is faulty. Such technical aspects of the phone are not challenged by plaintiff.

A review of the complaint makes the inaccuracy of defendants' position clear. Plaintiff states that the SOC lock is not essential to the functioning of the phone and that the TDMA cellular phone manufactured by Nokia for use on the Cingular network has a reprogrammable SOC. Both the phone and the Nokia cellular phone have been approved by the FCC. Defendants have not provided evidence that the FCC has considered whether a SOC should be permanent or alterable; at most, that the SOC itself is required. This information creates a reasonable inference that such a characteristic of the SOC is not regulated by the FCC. Cf. *Nader v. Allegheny Airlines,* 426 U.S. 290, 299-300 (1976); ("There is no board requirement that air carriers engage in over booking or that they fail to disclose that they do so."). Plaintiff's requested relief is disclosure of the permanence of the phone's SOC consistent with the consumer protection laws. As no technological change is implicated by either the factual allegations or the desired relief, defendants' implied preemption arguments fail.

Since there is no express warranty claim proceeding, defendant Panasonic's separate arguments require no consideration.

## ORDER

And now, October 22, 2004, upon consideration of defendants' preliminary objections to plaintiff's fourth

amended class action complaint (misidentified as the third amended class action complaint) and plaintiff's responses thereto, and in accordance with the attached memorandum opinion, it is hereby ordered and decreed as follows:

(1) Defendants' preliminary objections to Count I (misidentified as Count II) are overruled as they pertain to 15 U.S.C. §2302(a) and 15 U.S.C. §2302(c). All other preliminary objections to this count are sustained and this count is partially dismissed in accordance with this paragraph;

(2) Defendants' preliminary objections to Count II are overruled as they pertain to 13 Pa.C.S. §2314. All other preliminary objections to this count are sustained and this count is partially dismissed in accordance with this paragraph; and

(3) Defendants' preliminary objections to Count III are sustained and this count is dismissed.