# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-3332

JAMES J. FEDOR, JR.,

*Plaintiff-Appellant,*

v.

CINGULAR WIRELESS CORPORATION,
a Delaware Corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6849—**William J. Hibbler**, *Judge.*

ARGUED MAY 22, 2003—DECIDED JANUARY 22, 2004

Before BAUER, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* James J. Fedor, Jr., contracted
with Cingular Wireless ("Cingular") for a cellular tele-
phone service plan. For a fixed rate, that plan entitled him
to a certain amount of airtime minute usage each month,
and minutes in excess of that amount resulted in additional
charges to his account. In July 2001, Fedor filed a com-
plaint in state court against Cingular, alleging that
Cingular improperly billed minutes incurred in one month
to the billing periods in other months. For instance, Fedor
alleged that calls made in January were billed under the
allotment for February, resulting in extra charges for

February (i.e. because it caused him to exceed the fixed-rate minutes in February) even though no charges would have accrued had the minutes been properly attributed to January (because the January allotment of minutes was not fully used). Fedor alleged such billing discrepancies in months from January through April. The result of that billing practice, according to the complaint, is that Cingular customers incurred charges in excess of the charges that those customers should have paid under the service plan purchased. The state court complaint pleaded both individual and class action claims for breach of contract, breach of the covenant of good faith and fair dealing, consumer fraud, and unjust enrichment.

Pursuant to 28 U.S.C. § 1441(b), Cingular removed the state court claim to federal court. Fedor subsequently moved to remand the case back to state court, arguing that the case presented only state law claims. The district court, however, held that the complaint was a challenge to the reasonableness of Cingular's rates, and that such a challenge was completely preempted by the Federal Communications Act (FCA), 47 U.S.C. § 332(c)(3)(A), which provides that

> no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.

Cingular then filed motions to dismiss the complaint on a number of grounds, including that the complaint lacked subject matter jurisdiction, that the claims were within the primary jurisdiction of the Federal Communications Commission ("FCC"), and that it failed to state a claim. The district court granted some of the requested relief, dismissing two counts without prejudice as within the primary

jurisdiction of the FCC, and dismissing two other counts with prejudice for failure to state a claim.

The initial issue before this court on appeal is whether the district court erred in denying Fedor's motion to remand the case back to state court. We review the district court's denial of that motion *de novo.*

## I.

A state court civil action may be removed to federal court if the claim arises under federal law. *Beneficial Nat. Bank v. Anderson*, 539 U.S. ___, 123 S. Ct. 2058 (2003). Courts have long recognized, however, that a plaintiff who has both state and federal claims available may avoid federal court by limiting his or her complaint to only state law claims. Under the well-pleaded complaint rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim. *Id.* at 2062. Moreover, the availability of a federal defense to those state claims does not provide a basis for removal. *Id.*

In this case, there is no dispute that the complaint on its face alleges only state law claims. That would be the end of the inquiry but for the fact that the well-pleaded complaint rule is not without exceptions. Where a federal statute completely preempts the state-law cause of action, the claim, although pleaded in terms of state law, is in reality based on federal law, and therefore the claim is removable under 28 U.S.C. § 1441(b). *Beneficial*, 539 U.S. at 2063.

We considered that exception in the context of a state court complaint against a wireless carrier in *Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983, 987 (7th Cir. 2000), holding that § 332(c)(3) of the FCA "completely pre-empted the regulation of rates and market entry, allowing removal to federal court, although the savings clause continues to allow claims that do not touch on the areas of

rates or market entry." The issue, then, here as in *Bastien*, is whether the complaint actually challenges rates or market entry.

Cingular argues that the complaint indeed challenges both rates and market entry. According to Cingular, the complaint involves the timing of the billing and the amount billed, and therefore constitutes a challenge to rates. Essentially, Cingular would interpret the preemption provision as covering any claim that touches on the rates charged in any manner. Because the complaint alleges that Fedor's calls were improperly billed, Cingular asserts that it challenges the rates. That overstates the scope of the preemption, and in fact is a position that has been repeatedly rejected by courts and the FCC. *Bastien* is illustrative.

In *Bastien*, a wireless customer sued AT&T Wireless Services, Inc. ("AT&T Wireless") alleging that AT&T Wireless breached its contract to him and committed consumer fraud in signing up customers without first building the cellular towers and other infrastructure to provide reliable cellular connections, resulting in a large number of "dropped" calls, and that it continued to market its phones and service even though it had knowledge of the inadequacy of its infrastructure. *Id.* at 985. We held that his claims "tread directly on the very areas reserved to the FCC: the modes and conditions under which AT&T Wireless may begin offering services in the Chicago market." *Id.* at 989. Specifically, we noted that the FCC is responsible for determining the number, placement and operation of cellular towers and other infrastructure, as well as the rates and conditions that could be offered for the new service. *Id.* Bastien's claims, however, would have required AT&T Wireless to exceed those FCC requirements, providing more towers, clearer signals, or lower rates. *Id.* We noted that a number of Bastien's claims sounded like state law claims, such as allegations of breach of contract and misrepresentations, but those claims were founded on

AT&T Wireless' failure to build more towers and fully develop its network when the service was offered to Bastien, and thus directly addressed the areas reserved to federal law. *Id.*

*Bastien* contrasted that situation with the claims presented to the Sixth Circuit in *Long Distance Telecommunications Litig.*, 831 F.2d 627 (6th Cir. 1987) ("*Long Distance Litigation*"). In *Long Distance Litigation*, the plaintiffs brought state law claims of fraud and deceit against long-distance telephone companies for failing to inform customers of their practice of charging for uncompleted calls. The court in *Long Distance Litigation* held that Congress did not intend to preempt those claims, because the claims related to fraudulent and deceitful statements, and therefore did not impact federal regulation of the carriers. *Bastien*, 205 F.3d at 988-89. In contrast, we noted that Bastien's claims "would directly alter the federal regulation of tower construction, location and coverage, and quality of service and hence rates for service." *Id.* at 989.

Thus, *Bastien*, in contrasting its case with *Long Distance Litigation*, recognized that the nature of the claim would govern the inquiry, and that the focus is whether the claim necessarily treads upon the federally-reserved areas. The FCC reached the same conclusion in *In the Matter of Southwestern Bell Mobile Systems, Inc.*, 14 F.C.C.R. 19898 (1999) ("*Southwestern Bell*") and *In the Matter of Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. 17021 (2000) *("Wireless Consumers*"). In *Southwestern Bell*, the FCC held that state law claims stemming from state contract or consumer fraud laws governing disclosure of rates or rate practices are not generally preempted under § 332. *Southwestern Bell*, 14 F.C.C.R. at 19908 ¶ 23. The FCC held that billing information, practices and disputes which may be regulated by state contract or consumer fraud laws fall within the "other terms and conditions" which states are allowed to regulate. *Id.* at 19901 ¶ 7. Therefore, *Southwestern Bell*

rejected the notion that all claims related to rates or billing are necessarily preempted by § 332.

The FCC further explored that issue in *Wireless Consumers*, wherein it addressed whether damage awards against commercial mobile service providers based on state court tort or contract claims are preempted by § 332 as equivalent to rate regulation. 15 F.C.C.R. 17021. The FCC answered in the negative, holding that such claims are generally preempted only where they involve the court in ratemaking. *Id.* at 17034 ¶¶ 23, 24. The FCC in *Wireless Consumer*s expressly rejected the argument that any determination of monetary liability is equivalent to a finding that the service was inadequate for the charge, and therefore necessarily a finding that the rates charged were unreasonable. *Id.* at 17035 ¶ 25. The FCC recognized that state law claims are preempted where the court must determine whether the price charged for a service is unreasonable, or where the court must set a prospective price for a service. *Id.* The FCC proceeded, however, to delineate a number of circumstances in which inquiries related to rates or billing practices would not be preempted:

> On the other hand, a case may present a question of whether a CMRS [commercial mobile radio service] service had indeed been provided in accordance with the terms and conditions of a contract or in accordance with the promises included in the CMRS carrier's advertising. Such a case could present breach of contract or false advertising claims appropriately reviewable by a state court. In such a situation, a court need not rule on the reasonableness of the CMRS carrier's charge in order to calculate compensation for the injury that was caused, even though it could be appropriate for it to take the price charged into consideration in calculating damages. In our view, the court would not be making a finding on the reasonableness of the price charged but would be examining whether under state

law, there was a difference between promise and performance.

*Id.* at ¶ 26 [footnotes omitted]. Therefore, the FCC distinguished between claims that would enmesh the courts in a determination of the reasonableness of a rate charged and those that would require examination of rates in the context of assessing damages, but would not involve the court in such a reasonableness inquiry. Those opinions by the FCC are entitled to deference. *City of Chicago v. F.C.C.*, 199 F.3d 424 (7th Cir. 1999); *Christensen v. Harris County*, 529 U.S. 576 (2000); *Chevron U.S.A., Inc. v. National Resource Defense Council, Inc.*, 467 U.S. 837 (1984). In addition, that approach is consistent with our opinion in *Bastien*—as *Wireless Consumer* explicitly noted—because the claims in *Bastien* required the state court to determine the infrastructure appropriate to market entry, which is an area reserved under § 332. Other courts have reached similar conclusions. *See, e.g., AT&T Corp. v. FCC*, 349 F.3d 692, 701 (D.C. Cir. 2003) (recognizing that state courts may not determine the reasonableness of rates but may inquire into the existence of a contract and compliance with it); *Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 376 (N.J. Super. Ct. App. Div. 2002) (claims regarding whether a service was provided in accordance with the terms of the contract may be appropriately reviewable in state court because the court need not inquire into reasonableness of the charges, even though it could be appropriate for it to take the price charged into consideration in calculating damages); *Tenore v. AT&T Wireless Services*, 962 P.2d 104 (Wash. 1998) (challenge to practice of rounding up call charges not preempted by FCA because challenge was only to the non-disclosure of the practice not its reasonableness).

Those decisions thus reject the argument that any claims related to the billing amount are automatically preempted under § 332. Instead, we must examine whether the claims require the state court to assess the reasonableness of the

rates charged, or impact market entry. The claims in this case do not involve such an examination. Fedor asserts that Cingular agreed to provide him with a certain number of minutes of call-time each month, and that calls within that month that exceeded the allotted time would be subject to an additional fee. Fedor does not challenge the reasonableness of those charges, nor does he ask the court to determine whether the services provided were sufficient to justify the charges. Fedor merely argues that Cingular inappropriately attributed calls made in one month to the call-time for a different month, thus assessing charges that were different from the contract terms. A state court analyzing this claim would need to refer to the rates in assessing damages, but would never examine the reasonableness of those rates. In fact, even if the rates charged were patently unreasonable, no damages would be awarded unless the charges were inconsistent with the terms of the contract or the representations made by Cingular. In other words, these claims address not the rates themselves, but the conduct of Cingular in failing to adhere to those rates. That is precisely the type of state law contract and tort claims that are preserved for the states under § 332 as the "terms and conditions" of commercial mobile services.

## II.

Cingular's remaining argument is that the claims by Fedor are a challenge to market entry. According to Cingular, the claims would necessarily require alterations to its infrastructure because the calls for which billing is delayed are those that involve roaming (calls outside the service territory). Cingular cannot bill for those calls immediately because it must wait for the operators of the cellular towers in those areas to provide the billing information. Accordingly, Cingular argues that success on this complaint would require it to build its own cellular

towers in all of those areas, thus mandating changes in its infrastructure and thereby impacting market entry. That argument stretches the allegations of the complaint beyond recognition. The complaint alleges that the delayed billing damaged the plaintiffs because the minutes were not attributed to the proper month. It does not demand that the charges be billed immediately, but instead complains that the delayed charges are billed to the wrong month, therefore often resulting in an incorrect charge. Nothing in the complaint even remotely demands the construction of new towers, nor is that the logical consequence of the claims. The claims merely require Cingular to *bill* its customers in accordance with the terms of its agreements. That is an accounting problem, not an infrastructure problem, and at most would require Cingular to either (1) adjust its billing system so that the amount owed is calculated based on the minutes remaining and fees applicable to the months in which the call was made or, (2) alter its contract to provide that roaming charges are separately billed under the contract and may be attributed to another month. In other words, Cingular would have to conform its billing practices to the representation made in its contract. That does not relate to the construction or placement of towers at all.

Because the claims were properly before the state court and are not preempted by § 332, Fedor's motion to remand the case to state court should have been granted, and the claims considered on their merits by the state court rather than the district court. Accordingly, the decisions of the district court denying the motion to remand and granting the motions to dismiss are vacated, and the case is remanded to the district court for it to remand the case to state court. Appellee shall bear costs.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*