## In re WIRELESS TELEPHONE FEDERAL COST RECOVERY FEES LITIGATION

### Nos. MDL 1559, 403MD01559.

United States District Court,
W.D. Missouri,
Western Division.

Sept. 23, 2004.

Charles F. Speer, Speer Law Firm, Kansas City, MO, Edward D. Robertson, Jr., Bartimus, Frickleton, Robertson & Obetz, Matthew A. Clement, Cook, Vetter, Doerhoff & Landwehr, P.C., Jefferson City, MO, Stephen M. Gorny, Bartimus, Frickleton, Robertson & Obetz, Leawood, KS, Timothy W. Van Ronzelen, Cook, Vetter, Doerhoff & Landwehr, P.C., Jefferson City, MO, Joe R. Whatley, Jr., Whatley Drake, LLC, Birmingham, AL, Thomas Pirmantgen, Cook, Vetter, Doerhoff & Landwehr, P.C., Jefferson City, MO, Ann D. White, Mager White & Goldstein, Jenkintown, PA, Jayne Arnold Goldstein, Mager White & Goldstein, Coral Springs, FL, Anthony J. Bolognese, Bolognese & Associates, LLC, Philadelphia, PA, Richard D. Greenfield, Greenfield & Goodman LLC, Royal Oak, MD, Andrew S. Freidman, Bonnett Fairborn Friedman & Balint, PC, Phoenix, AZ, B.J. Wade, Glassman Edwards Wade & Wyatt. P.C., Memphis,

TN, H. Sullivan Bunch, Bonnett Fairborn Friedman & Blint, PC, Phoenix, AZ, John J. Stola, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Leslie E. Hurst, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Tameka Nichol Turner-Perry, Glassman, Edwards, Wade & Wyatt, PC, Memphis, TN, Timothy G. Blood, Milberg, Weiss, Bershad, Hynes & Lerach, LLP-CA, San Diego, CA, William C. Wright, Bonnett Fairborn Friedman & Balint PC, Phoenix, AZ, Jonathan S. Abady, Enery Celli Cuti Brinckerhoff & Abady, New York City, Colette D. Honorable, S. Gene Cauley, Steven A. Owings, Little Rock, AR, Donald Chidi Amamgbo, Amamgbo & Associates, Oakland, CA, Reginald Von Terrell, The Terrell Law Group, Richmond, CA, Remigius Chibueze, Amamgbo & Associates, PLC, Oakland, CA, Carol V. Gilden, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Chicago, IL, Douglas A. Millen, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Michael B. Hyman, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Michael E. Moskovitz, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Chicago, IL, Elias A. Alexiades, New Haven, CT, Andrew S. Friedman, Bonnett Fairborn Friedman & Balint, PC, Phoenix, AZ, Christa L. Collins, James, Hoyer, Newcomer & Smiljanich, P.A., John Allen Yanchunis, Sr., James, Hoyer, Newcomer & Smiljanich, P.A., Tampa, FL, Mark S. Fistos, Law Office of Mark S. Fistos, Esq., Tallahassee, FL, Ann Miller, Ann Miller, LLC, Philadelphia, PA, Christopher M. Larmoyeux, Larmoyeux & Bone, West Palm Beach, FL, Anthony F. Fata, Miller Faucher and Cafferty, LLP, James S. Shedden, Beeler, Schad & Diamond, P.C., Chicago, IL, Joshua Lifshitz, Bull & Lifshitz, LLP, New York City, Lawrence Wiley Schad, Beeler, Schad & Diamond, P.C., Chicago, IL, Marvin Alan Miller, Miller Faucher and Cafferty, LLP, Chicago, IL,

Steven J. Tomiello, Beeler, Schad & Diamond, P.C., Chicago, IL, David Pastor, Gilman and Pastor, LLP, Edward L. Manchur, Gilman and Pastor, LLP, Saugus, MA, Michael J. Kane, Mager White & Goldstein LLP, Jenkintown, PA, John E. Villafranco, Collier, Shannon, Scott, PLLC, Thomas E. Gilbertsen, Collier, Shannon, Scott, PLLC, Washington, DC, Myron M. Cherry, Myron Cherry & Associates, Gary L. Specks, Kaplan, Fox & Kilsheimer, LLP, Chicago, IL, Mark C. Rifkin, Wolf, Haldenstein, et al, New York City, Mary Jane Fait, Wolf, Haldenstein, Adler, Freeman & Herz, LLC, Chicago, IL, for Plaintiffs.

Dane H. Butswinkas, Williams & Connolly, LLP, Washington, DC, Deborah Rzasnicki Hogan, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Frederic R. Klein, Goldberg, Kohn, Bell, Black, Rosenbloom & Mortiz, Ltd., Chicago, IL, Harvey M. Tettlebaum, Husch & Eppenberger, LLC, Jefferson City, MO, James P. Madigan, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, Paul A. Alexis, Boult Cummings Conners & Berry, Nashville, TN, Jane Christine Drummond, Husch & Eppenberger, Jefferson City, MO, Frederick W. Turner, Snyder & Snyder, LLP, Tarrytown, NY, Joseph George Galardi, Steel Hector & Davis Phillips Point West, West Palm Beach, FL, Seamus C. Duffy, Drinker Biddle & Reath, Philadelphia, PA, Brant M. Laue, Armstrong Teasdale LLP, Chadler E. Colgan, Armstrong Teasdale LLP-KCMO, Kansas City, MO, Daniel D. Crabtree, Stinson, Morrison, Hecker, LLP-OPKS, Overland Park, KS, J. Kent Lowry, Amstrong Teasdale LLP, Jefferson City, MO, James Joseph Sipchen, Pretzel & Stouffer, Chtd., Chicago, IL, Mark D. Hinderks, Stinson Morrison Hecker LLP, Overland Park, KS, Richard M. Waris, Pretzel & Stouffer, CHTD., Chicago, IL,

William E. Hanna, Morrison & Hecker, Kansas City, MO, John McQuiston, II, Stokes Bartholomew Evans & Petree, PA, Memphis, TN, Lee Lauridsen, Sprint Law Department, Overland Park, KS, Michael Byrley Colgan, Glenn, Rasmussen, Fogarty & Hooker, PA, Tampa, FL, Scott A. Frick, Stokes Bartholomew Evans & Petree, PA, Memphis, TN, Alysa N. Zeltzer, Collier Shannon Scott, Washington, DC, Christopher J. Huber, Pepper Hamilton, Philadelphia, PA, Joseph George Galardi, Steel Hector & Davis, West Palm Beach, FL, Michael R. Johns, Dover Dixon Horne, PLLC, Little Rock, AR, Robert L. Hickok, Pepper Hamilton, Philadelphia, PA, Thomas S. Stone, Little Rock, AR, William M. Bailey, Collier Shannon Scott, PLLC, Washington, DC, Frederick W. Turner, Brian L. Ferrall, Keker & Van Nest, LLP, Amor A. Esteban, Drinker Biddle & Reath LLP, Jeanine M. Donohue, Drinker Biddle & Reath, Michele D. Floyd, Reed Smith Crosby Heafey LLP, San Francisco, CA, Gerald J. Caruso, Rubin & Rudman, LLP, Rebecca I. Tepper, Rubin & Rudman, LLP, Boston, MA, James McNamara, Milberg, Weiss, Bershad, Hynes & Lerach, LLP-CA, San Diego, CA, Laura Thompson Goettsch, Niewald, Waldeck & Brown, John O'Connor, Niewald, Waldeck & Brown, Michael E. Waldeck, Niewald, Waldeck & Brown, Kansas City, MO, Cory S. Fein, Caddell & Chapman, Cynthia B. Chapman, Caddell & Chapman, Fernando de Leon, Caddell & Chapman, Houston, TX, Kenneth E. Nelson, Nelson Law Firm, PC, Kansas City, MO, Michael A. Caddell, Caddell & Chapman, Houston, TX, Mitchell A. Toups, Beaumont, TX, Dale Kenneth Irwin, Slough, Connealy, Irwin & Madden, LLC, Kansas City, MO, Jacqueline Sailer, Rabin, Murray & Frank, LLP, New York City, Daniel A. Ball, Goldbert Ball, P.C., Potomac, MD, Paul L. Bittner, New Albany, OH, Wireless Consumers Alliance, Inc., Del Mar, CA, Robert A. Holstein, Holstein Law Offices, LLC, Chicago, IL, Bryan D. Marcus, Bryan D. Marcus, P.C., Livonia, MI, Charles D. Chalmers, Mill Valley, CA, Samaraweera Law Office, NW Washington, DC, Utility Consumers' Action Network, San Diego, CA, Stephen Robert Clark, Polsinelli, Shalton & Welte, St. Louis, MO, Bruce Keplinger, Norris & Keplinger, LLC, Overland Park, KS, Marcus Neil Bozeman, Cauley, Geller, Bowman & Rudman, LLP, Little Rock, AR, for Defendants.

## ORDER

GAITAN, District Judge.

On May 26, 2004, the Court ordered that the parties submit briefs concerning the Court's jurisdiction over the remaining actions that comprise the above-entitled proceeding and also whether the Court's December 16, 2003, All Writs Act injunction should be continued, modified or discontinued.

## I. BACKGROUND

On November 13, 2003, the Judicial Panel on Multidistrict Litigation transferred to this Court five actions pending in five districts. Over the next seven months, the Panel transferred an additional twenty-one cases to this Court. The Panel found that the actions presented common, complex legal and factual questions concerning the disclosure and/or propriety of line-item fees charged by wireless telephone service providers to customers for recovering the costs of complying with one or more federally mandated telecommunication programs.

Shortly before the cases were transferred to the Judicial Panel on Multidistrict Litigation, Nextel West Corp. and Nextel Communications, Inc. (together "Nextel"), Nextel Partners, Inc. ("Nextel

Partners") and Plaintiffs in the *Blando v. Nextel* case, (W.D.Mo.02–921), filed a motion seeking preliminary approval of a class action settlement agreement. The Court entered an Order on October 9, 2003 preliminarily approving the settlement and directing that notice be sent to the class [1]. A Fairness Hearing was held on January 29, 2004. On April 20, the Court entered an Order granting the parties' Motion for Final Approval of the Amended Settlement Agreement. As a result of the settlement, fifteen individual cases were dismissed. At the present time, there are eleven cases which still remain before the Court.

After the Court had approved the settlement in the *Blando* case, the Court invited the parties to submit briefs addressing the Court's jurisdiction over the remaining actions and also whether the All–Writs Act injunction should be continued, discontinued or modified. The Plaintiffs' Coalition argues that the remaining cases should be remanded because they were improperly removed. The plaintiffs argue that removal was improper because the Court lacks jurisdiction under the complete preemption doctrine, federal question jurisdiction and diversity jurisdiction. Cingular and Sprint argue that the cases were properly removed and that although plaintiffs' claims are described as state-law consumer protection, fraud and contract claims, they are really attempting to use state laws to regulate the carriers' rates in violation of the Federal Communications Act. Thus, they argue that the Court has jurisdiction under the Complete Preemption, Artful Pleading and Substantial Federal Question

doctrines. The Illinois plaintiffs [2] also filed a brief addressing the Court's jurisdiction. The Illinois plaintiffs argue that they are challenging the "deceptive manner in which the defendants' various fees were placed on their bills and the imposition of the fees in relation to the terms and conditions under which the Illinois Plaintiffs contracted for the provision of wireless service." (Illinois Plaintiffs' Suggestions, p. 5). The Illinois plaintiffs also request that the Court revisit the preemption issue in light of a recent decision by the Seventh Circuit.

## II. THE CASE FOR FEDERAL JURISDICTION

After reviewing the parties' briefs, the Court finds that defendants make a compelling argument for retaining federal jurisdiction, in part due to the mandates which the FCC has recently required of wireless carriers. The FCC has used its authority over wireless carriers to require them to implement several initiatives including: enhanced 911 services, local number portability, number pooling and telecommunications relay services. Cingular notes that in order to ensure adequate funding and timely implementation of these costly initiatives, the FCC expressly authorized wireless carriers to recover their implementation costs from subscribers and left it to the carriers' discretion as to "whether, how, and how much of such costs they could choose to recover directly from the consumers through separately identifiable charges." (Cingular's Sugges-

---

1. The Court notes that in the *Blando* action, plaintiffs also initially challenged this Court's jurisdiction and filed a motion to remand their case to state court. However, on October 3, 2003, plaintiffs filed a motion for leave to file an amended Complaint, asserting a claim under § 201 of the FCA.

2. Steve Alport, plaintiff in *Alport v. Sprint Corp., et al.,* (N.D.Ill. 03–6246; W.D.Mo. 04–62); Tanna Sparks, plaintiff in *Sparks v. Sprint Corp., et al.* (N.D.Ill. 03–8140; W.D.Mo. 04–134) and Anne Franczyk, plaintiff in *Franczyk v. Cingular Wireless, LLC,* (N.D. Ill. 03–6473; W.D.Mo. 04–265) are identified as the "Illinois plaintiffs."

tions, p. 8, n. 8, quoting First Report and Order and Notice of Proposed Rulemaking, *In re Truth–In–Billing and Billing Format,* 1999 WL 292765, 14 F.C.C.R. 7492, ¶ 56 (1999)("Truth–in–Billing Order")). Cingular also states that while the FCC did not mandate a standardized method for disclosing federal program cost recovery fees to customers, it endorsed the line-item method that Cingular employs. Truth–in–Billing Order, 1999 WL 292765, 14 F.C.C.R. 7492 ¶ 55.

Another reason for retaining jurisdiction is to avoid inconsistent state court interpretations, further the government's goal of national uniformity and avoid immersing state courts in areas which are more suitable for federal jurisdiction. The manner in which defendants have characterized the charges on their bills should not control where these cases are heard. Federal oversight efforts by the FCC or at the district court level would guarantee a judicially efficient disposition of these complaints without the potential for inconsistent results to the litigants. Further, federal jurisdiction would also reduce judicial costs and maximize any value gained from this litigation to those who have suffered a loss. However, this jurisdiction should be grounded in complete preemption and clearly stated in the FCA. This would eliminate any confusion and need to rely on the artful pleading or substantial federal question doctrines.

Having said what the law ought to be, it is clear that the law as currently written and interpreted does not support federal jurisdiction. The clear majority of cases hold to the contrary. As much as the Court would like to change this trend, it cannot legislate from the bench. Instead, the Court is compelled to follow the overwhelming caselaw. Although there may be good policy reasons for retaining juris-

diction, the caselaw and certain provisions of the FCA compel a different result. The Court finds that the issues raised by plaintiffs are not completely preempted. "Complete preemption applies only if there is a finding that Congress intended to provide an exclusive federal remedy for a particular claim." *Moriconi v. AT & T Wireless PCS, LLC,* 280 F.Supp.2d 867, 872 (E.D.Ark.2003). In the FCA, 47 U.S.C. § 332(c)(3)(A), states, "[n]otwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, *except* that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." (Emphasis added). Thus, the statute clearly states that it was not intended to be the sole, exclusive remedy. Additionally, for the reasons discussed below, the Court finds that plaintiffs have not artfully pled their claims nor do their Complaints raise a substantial question of federal law not contemplated by the FCA. As plaintiffs have not met any of the present requirements for federal jurisdiction, the Court finds that it is left with no choice but to remand these cases to their respective state courts. While there may be very good policy reasons for retaining these cases in federal court, the Court must follow the law as it presently exists. It is the job of Congress, not this Court, to change the law.

## III. DISCUSSION

### A. Law of the Case Doctrine

Before discussing the Complete Preemption doctrine, the Court must address an issue raised by Sprint and Cingular. These defendants state that because

the Courts in three cases[3] have already denied motions to remand, this Court is prevented by the law of the case doctrine from reviewing those determinations.

In *United States v. Bartsh,* 69 F.3d 864 (8th Cir.1995), the Court stated:

> The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy.... Under this doctrine, a decision in a prior appeal is followed in later proceedings unless a party introduces substantially different evidence, or the prior decision is clearly erroneous and works a manifest injustice.

*Id.* at 866 (internal citations and quotations omitted). *See also Little Earth of the United Tribes, Inc. v. United States Dep't. of Hous. & Urban Dev.,* 807 F.2d 1433, 1440–1441 (8th Cir.1986)(same). The Court in *In re Exterior Siding & Aluminum Coil Antitrust Litigation,* 696 F.2d 613 (8th Cir.1982), *vacated,* 705 F.2d 980 (8th Cir.1983)(en banc), *cert. denied,* 464 U.S. 866, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983), considered whether an MDL transferee judge incorrectly reversed a decision by the transferor judge on class certification. The Eighth Circuit stated:

> We do not question the power of a transferee court to overturn the decisions of a transferor court under the proper circumstances. A transferee court must be free to alter conflicting orders of transferor courts in order to effectuate the purposes of 28 U.S.C. § 1407. The powers of a transferee court are not unlimited, however.

Although a judge may not be bound by the rulings of his predecessor, he also is not free to ignore them. This is the doctrine of 'the law of the case', which holds that a judge ordinarily should not overrule the decisions of a prior judge in the same case without good cause.... We have observed previously that the law of the case doctrine is a rule of practice rather than a command to courts.... However, the doctrine is something more than mere courtesy, which implies only deference to the opinion of others, since it has substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question.

*Id.* at 616 (internal citations and quotations omitted).

Sprint argues that there is no reason to change the decisions of the other courts that have considered this question, because there has been no change in governing law, no new evidence has emerged and the plaintiff's coalition has not argued that the previous decisions were clearly erroneous. Plaintiffs argue that the court is free to examine its subject matter jurisdiction at any time, the law of the case allows for discretion and there have been significant developments in the law since the previous courts ruled on the motions to remand.

The Court agrees and finds that the law of the case doctrine does not prevent it from examining its jurisdiction to hear a case, particularly in this instance where the Court finds that there have been significant developments in the law since the previous courts ruled on the motions to remand. The decisions in *Milner, Alport* and *Franczyk* were decided respectively in August 2003, December 2003 and January 2004. Since those cases were decided, the

---

**3.** *Milner v. Sprint Spectrum,L.P.* (N.D.Ill. 03–1344; W.D.Mo. 04–51), *Alport v. Sprint Corp. et al.* (N.D.Ill. 03–6246; W.D.Mo. 04–62) and *Franczyk v. Cingular Wireless, LLC.,* (N.D.Ill. 03–6473; W.D.Mo. 04–265).

Court notes that there have been at least five decisions from different courts covering the time period from October 2003 until July 2004 which have addressed the issues of complete preemption, artful pleading and substantial federal question[4]. Because there have been a number of decisions from courts around the country addressing these issues, the Court finds that changed circumstances justify this Court's revisiting the issues in the previous orders which denied the motions to remand.

## B. Standard

This Court, as a court of limited jurisdiction, has a duty to assure itself that it has subject matter jurisdiction in every case. *See Barclay Square Properties v. Midwest Federal Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987). Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from the state court to federal court only if the claim could have been originally brought in federal court. *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir.2000)[*cert. denied*, 532 U.S. 921, 121 S.Ct. 1358, 149 L.Ed.2d 288 (2001) ]. The party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction. *See In re Business Men's Assur. Co. of America*, 992 F.2d 181, 183 (8th Cir.1993); *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Amoco Oil Company*, 883 F.Supp. 403, 407–08 (N.D.Iowa 1995). The federal courts' removal jurisdiction must be strictly construed; therefore, the district court is required to resolve all doubts about federal jurisdiction in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

*Sothmann v. Quad Cities Surgical Associates, S.C.*, No. 3–02–CV–90142, 2003 WL 288980, *1 (S.D.Iowa, Feb. 5, 2003).

The cases presently before the Court were removed pursuant to 28 U.S.C. § 1441(a) and (b) on the ground that they are civil actions of which the Court has original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States. "A defendant may remove a state court claim to federal court only if the claim originally could have been filed in federal court, and the well-pleaded complaint rule provides that a federal question must be presented on the face of the properly pleaded complaint to invoke federal court jurisdiction." *Gore v. Trans World Airlines*, 210 F.3d at 948 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). The Court in *Gore* also noted:

> An independent corollary to the well-pleaded complaint rule is known as the complete preemption doctrine. . . . The complete preemption doctrine converts an ordinary state-law claim into a federal claim where the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. . . . Whether federal law preempts a state-law cause of action is a question of congressional intent.

*Id.* at 949 (internal quotations and citations omitted).

---

**4.** *Whitney v. ALLTEL Communications, Inc.*, No. 03–4005, (W.D.Mo. Oct. 16, 2003); *Gattegno v. Sprint Corp.*, 297 F.Supp.2d 372 (D.Mass.2003); *Fedor v. Cingular Wireless Corp.*, 355 F.3d 1069 (7th Cir.2004); *In re Wireless Telephone Radio Frequency Emissions Products Liab. Litig.*, 327 F.Supp.2d 554 (D.Md.2004); *Phillips v. AT & T Wireless*, No. 4:04–CV–40240, 2004 WL 1737385 (S.D.Iowa July 29, 2004).

## C. Complete Preemption

In *Moriconi v. AT & T Wireless PCS, LLC,* 280 F.Supp.2d 867, the Court explained:

Complete preemption applies only if there is a finding that Congress intended to provide an exclusive federal remedy for a particular claim. When complete preemption applies, a federal question exists whether a plaintiff characterizes her claims as federal or state. A plaintiff then cannot avoid federal jurisdiction by characterizing her claims only as state law claims. Under the 'artful-pleading doctrine,' the state law claims are re-characterized as federal claims, and removal is proper based on the theory that plaintiff's claim is actually federal, regardless of how it is pled.

*Id.* at 872.

### 1. Beneficial Decision

■ Plaintiffs argue that prior to the United States Supreme Court's ruling in *Beneficial National Bank v. Anderson,* 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003), the United States Supreme Court had only found complete preemption in three areas: the Labor Management Relations Act, the Employee Retirement Income Security Act and some areas involving the affairs of American Indians. *See Caterpillar,* 482 U.S. at 393–99, 107 S.Ct. 2425; *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Oneida Indian Nation v. Oneida County, N.Y.,* 414 U.S. 661, 675, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). Plaintiffs state that the Eighth Circuit had also recognized complete preemption in two additional instances, the National Bank Act, *M. Nahas & Co. v. First National Bank of Hot Springs,* 930 F.2d 608 (8th Cir.1991) and the Railway Labor Act and Interstate Commerce Act, *Deford v. Soo Line R. Co.,* 867 F.2d 1080 (8th Cir.), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). In *Beneficial,* the Supreme Court added the National Bank Act to this list.

Cingular and Sprint argue that in *Beneficial,* the Supreme Court explained that "the proper inquiry [for jurisdiction] focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable...." *Beneficial,* 539 U.S. at 9 n. 5, 123 S.Ct. 2058. Sprint states that after *Beneficial,* the standard for determining whether federal law completely preempts a state law claim consists of two questions: "(1) Does federal law provide a cause of action for any of the claims asserted by the Complaint? (2) If so, does federal law provide the exclusive cause of action for that claim?" (Sprint's Suggestions, p. 4). Additionally, Cingular argues that in *Aetna Health Inc. v. Davila,* —— U.S. ——, ——, 124 S.Ct. 2488, 2498, 159 L.Ed.2d 312 (2004), the Supreme Court made clear that "when federal law provides the exclusive cause of action, a plaintiff cannot defeat federal jurisdiction by purporting to rely solely on state law." (Cingular's Suggestions in Opposition to Plaintiff's Memorandum, p. 11).

In *Moriconi v. AT & T Wireless PCS, LLC,* 280 F.Supp.2d 867, the Court stated:

*Beneficial* makes clear that in evaluating congressional intent it is not necessary to find that Congress intended the cause of action to be removable. Such an approach is a semantic departure from prior case law instructing courts faced with a complete preemption argument to determine whether Congress has clearly manifested an intent to make a cause of action pleaded under state law removable to federal court, mindful that in the ordinary case federal preemption is merely a defense to a plaintiff's lawsuit.... This Court does not, however,

read *Beneficial* as lowering the bar for a finding of complete preemption. Such a finding is still the exception rather than the rule and requires a statute with unusually powerful pre-emptive force. *Id.* at 873 (quotations and citations omitted). Therefore, before the Court can analyze whether plaintiffs' claims are preempted, it must be determined what type of claims plaintiffs are asserting.

### 2. What kind of actions are plaintiffs asserting?

Defendants argue that plaintiffs' claims, although couched in consumer protection language, are really an attack upon their rates. Cingular argues that the Court should consider the true nature of plaintiffs' claims and should not elevate form over substance. Cingular argues that the plaintiffs are directly attacking the legality of the fee in at least three ways: 1) seeking to use state law to determine Cingular's right to charge the fee; 2) challenging the amount of the fee as excessive or unjust in relation to Cingular's costs and/or services provided and seeking retroactive adjustment of the amount charged and 3) challenging Cingular's use of a separate line-item rate element to recoup its regulatory costs.

Plaintiffs stated in reply that Sprint and Cingular have distorted the allegations in the various complaints to try and show that the complaints are actually attacking the carriers' rates. However, plaintiffs state that "what the complaints are alleging is not the unlawful nature of the price increase, but the unlawful nature of the carrier's concealment of the price increase." (Reply Memorandum of Plaintiffs' Coalition, p. 7). For example, in *Benney v. Sprint,* plaintiffs allege in ¶ 15 that "[i]n assessing the 'USA Regulatory Obligations Fee' Sprint does not disclose to its customers, including the plaintiff, that the charge is not governmentally mandated and, instead, misleads its customers to believe that the charge is a tax due to its title and location on the telephone bill." Similarly, in *Hobson v. Cingular Wireless, LLC,* the plaintiffs allege in ¶ 32 that "Cingular recklessly, intentionally, or negligently concealed facts relating to the true and actual charges for its service plans to Plaintiffs and the other members of the Class, including advertising and quoting artificially low prices for such Plans while failing to disclose adequately that the prices for service plans did not include the assessments."

In *Brewer v. Sprint,* plaintiffs allege in ¶ 27 that "[d]efendants, directly or through affiliates, are including a line item in its invoices labeled USA Regulatory Obligations and Fees." Sprint placed this line item under the category "Other Surcharges and Fees," which is placed after a list of taxes under the heading "Taxes and Regulatory Charges." Sprint uses the phrase "USA Regulatory Obligation & Fees" even though the fee is not a tax or mandated, and there is no federal regulation obligating Sprint to impose this fee. In at least one part of its invoice sent to customers, Sprint shows a dollar amount that is the sum of the "USA Regulatory Obligations & Fees" amount plus actual taxes, and is group listed under the heading "Taxes/Surcharges/Regulatory." " The remaining complaints all raise similar allegations.

Thus, as the Court stated in *State ex rel. Nixon v. Nextel West Corp.,* 248 F.Supp.2d 885 (E.D.Mo.2003),

[t]he Court finds plaintiff's Petition is straightforward and challenges only the defendants' allegedly deceptive description of their rates in invoices and advertising. The Petition does not challenge the rates themselves and does not ask the state court for any relief that would

regulate the defendants' rates. The Petition does not assert that defendants' fees should be included in the basic rate rather than exist as a separate line item, but instead asks that the defendants 'fully and fairly disclose the nature' of their fees 'if they choose' to impose them. There is nothing in the Petition which will require defendants to change their rate practices.

As a result, plaintiff's claims in this case are readily distinguishable from those in *Bastien,* [205 F.3d 983 (7th Cir.2000) ] and are analogous to the type of state law claims that courts have uniformly found are not preempted.

*Id.* at 892.

This Court concludes that plaintiffs are only alleging state law causes of action and are not challenging either defendants' rates or entry into the market. Thus, having determined that plaintiffs are alleging consumer protection claims, the Court will next examine whether the FCA provides a cause of action for these types of claims.

**3. Does the FCA provide a cause of action for any of the claims asserted in the Complaints?**

The FCA provides a cause of action to consumers who claim that they have been damaged by a wireless carrier. 47 U.S.C. § 207 states that:

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

As the Court noted in *Moriconi,* "[t]he FCA fails, however, to provide aggrieved consumers of wireless services with any federal remedies for deceptive advertisement or billing." 280 F.Supp.2d at 874. Thus, if plaintiff's claims are considered to be consumer complaints alleging improper description of charges, the FCA does not provide a cause of action for these types of claims.

**4. Does the FCA provide the exclusive cause of action for consumer protection claims ?**

Plaintiffs argue that complete preemption does not apply in this situation because Congress did not intend that state law claims should be consumed by the Act, as evidenced by the FCA's savings clause and legislative history.

With regard to Congressional intent, plaintiffs argue that there are two provisions of the FCA which show that Congress did not intend to completely preempt state law causes of action. The first provision, 47 U.S.C. § 414, is a savings clause which provides:

Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of such chapter are in addition to such remedies.

The second provision, 47 U.S.C. § 332(c)(3)(A) states:

(3) State Preemption.

(A) Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of mobile services.

In a House of Representatives report, it was stated:

It is the intent of the Committee that the states still would be able to regulate the terms and conditions of these services. By "terms and conditions," the Committee intends to include such matters as customer billing information and practices and billing disputes and other consumer protection matters, facilities siting issues (e.g.zoning); transfers of control; the bundling of services and equipment; and the requirement that carriers make capacity available on a wholesale basis or such other matters as fall within a state's lawful authority. This list is intended to be illustrative only and not meant to preclude other matters generally understood to fall under "terms and conditions."

H.R.Rep. No. 103–111, 103rd Cong., 1st Sess, 211, 261 *reprinted* in 1993 U.S.C.C.A.N. 378, 588.

Thus, plaintiffs argue that "[t]he plain language of the FCA savings clause, the legislative history of the FCA and the FCC's own regulations and rulings all show that Congress intended to preserve, with limited exceptions, state law claims in the FCA, *not* completely preempt them." (Memorandum of Plaintiff's Coalition, p. 10).

Several other courts have also found that these two provisions do not serve as a basis for complete preemption. In *Russell v. Sprint Corp.*, 264 F.Supp.2d 955 (D.Kan. 2003), the Court stated:

Many other courts, however, have found that Section 332 and related provisions do not serve as a basis for removal under the complete preemption doctrine.... These courts point to the lack of evidence that Congress intended any FCA provisions, including the preemptive provisions of Section 332, to permit removal.

... Further, the FCA savings clause provides that '[n]othing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.' 47 U.S.C. § 414. This type of savings clause, which contemplates application of state law and exercise of state court jurisdiction, indicates that Congress did not intend to 'replicate the unique preemptive force of the LMRA and ERISA....' By allowing states to regulate 'other terms and conditions of commercial mobile services,' Section 332(c)(3) suggests that Congress did not intend complete preemption. *Bryceland v. AT & T Corp.*, 122 F.Supp.2d 703, 707 n. 3 (N.D.Tex.2000).

*Id.* at 960–61 (internal citations omitted). The Court in *Russell* acknowledged that in *Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983 (7th Cir.2000), the Court found that Section 332(c)(3) provided removal preemption for plaintiff's state law claims of breach of contract and consumer fraud. However, the Court in *Russell* observed that the Seventh Circuit in *Bastien* did not analyze removal intent as directed by the Supreme Court. *Id.* at 961. *See also Quayle v. MCI Worldcom, Inc.*, No. C–00–3694 SC, 2001 WL 1329594, *3 (N.D.Cal. Oct. 22, 2001)("neither the Ninth Circuit nor the Supreme Court has found the requisite Congressional intent in the FCA."). In *State ex rel. Nixon*, 248 F.Supp.2d 885 (E.D.Mo.2003), the Court stated:

The Eighth Circuit has not addressed whether Congress intended the FCA to completely preempt state law claims in the field of interstate telecommunications. Two circuits have held that the FCA does not completely preempt state law claims in the field because, as the Second Circuit explained, "The FCA not

only does not manifest a clear Congressional intent to preempt state law actions prohibiting deceptive business practices, false advertisement, or common law fraud, it evidences Congress's intent to allow such claims to proceed under state law." *Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir.1998)(citing the FCA's savings clause, 47 U.S.C. § 414). "Moreover, while the FCA does provide some causes of action for customers, it provides none for deceptive advertisement and billing." *Id.* In *Smith v. GTE Corp.*, 236 F.3d 1292, 1312 (11th Cir.2001) the Eleventh Circuit reached the same conclusion. The weight of authority holds that the FCA does not completely preempt state law claims. . . .

The Court finds that the statutory text of the FCA lacks the extraordinary preemptive power required to convert a state-law complaint "into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. 1542. *Id.* at 890–91 (internal citations omitted). *See also Moriconi*, 280 F.Supp.2d at 874 ("The statutory language, the legislative history, and the savings clause compel the conclusion that Congress envisioned that consumers would not be deprived of their state law causes of action for consumer related fraud."); *Gattegno v. Sprint Corp.*, 297 F.Supp.2d 372, 376–77 (D.Mass.2003); *Lewis v. Nextel Communications, Inc.*, 281 F.Supp.2d 1302, 1305–06 (N.D.Ala. 2003); *TPS Utilicom Servs., Inc. v. AT & T Corp.*, 223 F.Supp.2d 1089, 1100 (C.D.Cal.2002); *Threadgill v. Cingular Wireless, LLC*, 223 F.Supp.2d 786, 788–89 (E.D.Tex.2002).

Although there have been some courts which have found complete preemption: *Alport v. Sprint Corp.*, No. 03–C–6246, 2003 WL 22872134, *3 (N.D.Ill. Dec. 4, 2003), *Franczyk v. Cingular Wireless, LLC*, No. 03 C 6473, 2004 WL 178395 (N.D.Ill.2004), *Gilmore v. Southwestern Bell Mobile Systems Inc.*, 156 F.Supp.2d 916 (N.D.Ill.2001) and *In re Comcast Cellular Telecommunications Litigation*, 949 F.Supp. 1193 (E.D.Pa.1996), the majority of the courts that have considered the question have determined that the FCA does not completely preempt state law claims. *See Guglielmo v. WorldCom, Inc.*, No. Civ. C–00–160–B, 2000 WL 1507426, *4 (D.N.H. July 27, 2000)("I agree with the large number of courts that have concluded that the FCA does not have the extraordinary preemptive force required for complete preemption."); *Braco v. MCI Worldcom Communications, Inc.*, 138 F.Supp.2d 1260, 1269 (C.D.Cal. 2001)("There are a few cases supporting Defendant's position that [the FCA completely preempts state law claims]. . . However, the Court finds that the weight of authority, as well as the more consistent reasoning, supports a finding that it does not.").

Cingular states that "[i]t is beyond cavil that the Communications Act provides the exclusive cause of action for claims challenging wireless rates. Section 332(c)(3)(A) of the Act absolutely prohibits 'any' state or local regulation of the 'rates charged by' wireless carriers." (Cingular's Suggestions, p. 11). Defendants argue that several courts have found that 47 U.S.C. § 332(c)(3)(A), which provides that "no state or local government shall have any authority to regulate the entry of or the rates charged by a [wireless carrier]," supports federal jurisdiction. Cingular argues that 47 U.S.C. § 207 vests exclusive original jurisdiction over claims regarding consumer protection obligations in the federal district courts and the FCC. In support of this assertion, Cingular cites to *AT & T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899, 905 (9th Cir.2002) and *Bastien v.*

*AT&T Wireless Services Inc.*, 205 F.3d 983 (7th Cir.2000) as support for this proposition. However, both of these cases are distinguishable.

In *Coeur d'Alene,* an Indian tribe was suing AT & T pursuant to 47 U.S.C. § 151, *et seq.* The Court in that case found that 47 U.S.C. § 207 of the FCC established procedures for parties to pursue remedies for injuries sustained. The Court found that "[b]y its express language, § 207 establishes concurrent jurisdiction in the FCC and federal district courts only, leaving no room for adjudication in any other forum—be it state, tribal or otherwise." *Id.* at 905. Thus, the Court found that the Tribe had no recourse to its own courts and could file a complaint only with the FCC or in federal district court. That case, however, did not deal with allegedly deceptive or misleading advertising, but instead with whether AT & T had to provide a toll free telephone service for the Tribe's lottery. As noted earlier, the FCA does not provide a cause of action for deceptive advertising or billing. Additionally, in *Bastien,* the Court found that plaintiff was challenging AT & T Wireless's rates and its right to enter the Chicago market. This Court has determined that plaintiffs are not challenging either the carriers' rates or entry into the market. Thus, the Court finds that these cases are distinguishable and do not establish that the FCA vests exclusive original jurisdiction over consumer protection claims in the federal courts and FCC.

The Court notes that in a recent Seventh circuit decision, *Fedor v. Cingular Wireless Corp.*, 355 F.3d 1069 (7th Cir. 2004), the Court clarified its decision in *Bastien.* The Court in *Fedor* was considering whether a complaint which alleged that Cingular had improperly billed minutes incurred in one month to the billing periods in other months was actually a challenge to Cingular's rates. The Court found that it "must examine whether the claims require the state court to assess the reasonableness of the rates charged, or impact market entry." *Id.* at 1074. The Court in *Fedor* found that the claims at issue in that case did not require as assessment of the reasonableness of the rates because the plaintiff was not contesting the reasonableness of the charges, nor asking the court to determine if the services provided justified the charges. The Court stated,

> Fedor merely argues that Cingular inappropriately attributed calls made in one month to the call-time for a different month, thus assessing charges that were different from the contract terms. A state court analyzing this claim would need to refer to the rates in assessing damages, but would never examine the reasonableness of those rates.... In other words, these claims address not the rates themselves, but the conduct of Cingular in failing to adhere to those rates. That is precisely the type of state law contract and tort claims that are preserved for the states under § 332 as the "terms and conditions" of commercial mobile services.

*Id.* at 1074. Similarly, in the instant cases, the Court finds that the plaintiffs are challenging not the reasonableness or the ability to charge the various fees, but rather plaintiffs are challenging the defendants' description and placement of the fee on their bills. As in *Fedor,* the Court does not find that this is a challenge to the defendants' rates and thus does not warrant preemption.

The Court finds that based on the legislative history and the savings clause, the Federal Communications Act *does not* provide the exclusive cause of action for consumer protection claims. Therefore, the Court hereby finds that the plaintiffs'

claims are not completely preempted by federal law.

### D. Artful Pleading Doctrine

■ Cingular argues that even in the absence of complete preemption, removal is supported by the artful pleading doctrine, which allows removal of claims that although couched in terms of state law are inherently federal in nature. In support of this argument, Cingular cites *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). In that case, the Supreme Court stated:

> Allied as an independent corollary to the well-pleaded complaint rule is the further principle that a plaintiff may not defeat removal by omitting to plead necessary federal questions.... If a court concludes that a plaintiff has artfully pleaded claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim.

*Id.* at 475, 118 S.Ct. 921 (internal citations and quotations omitted).

Cingular states that the artful pleading doctrine provides an independent basis for removal, regardless of whether Plaintiff's claims are completely preempted. In support of this assertion, Cingular relies on *Marcus v. AT&T Corp.,* 138 F.3d 46 (2d Cir.1998) and *In re Wireless Tel. Radio Frequency Emissions Products Liability Litigation,* 216 F.Supp.2d 474, 492–93 (D.Md.2002)[5]. In *Marcus,* the Court

found that the plaintiffs' breach of warranty claim necessarily raised a substantial federal question and that is why artful pleading allowed removal of those claims. Additionally, in *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.,* 327 F.Supp.2d 554 (D.Md.2004), the Court explained:

> As I noted in the prior remand decision, artful pleading is not a separate removal doctrine, but rather refers to the manner in which some plaintiffs manage to plead claims that are actually federal (because they are either completely preempted, or based entirely on substantial federal questions) under state law.... Recent federal court decisions likewise have equated the doctrine of artful pleading with complete preemption or the substantial federal question doctrine....
>
> Thus, the artful pleading doctrine can provide additional support for removal in cases in which federal jurisdiction is based on complete preemption or substantial federal question grounds, and where a plaintiff has pled a state law claim that is actually federal.... **The [artful pleading] doctrine does not provide an independent basis for removal.**

*Id.* at 563 (internal citations omitted and emphasis added). Additionally, in *Nixon v. Nextel,* 248 F.Supp.2d 885, the Court found that plaintiff's claims arose solely from state law and did not depend on the existence of any federal right as an essential element of the cause of action. Thus,

---

**5.** The decision cited by Cingular, *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.,* 216 F.Supp.2d 474, 492–93 (D.Md.2002), was decided by Judge Blake in 2002. In that decision the Court found that federal jurisdiction supported removal based on the substantial federal question doctrine. In *In re Wireless Tel. Radio Frequency Emis-*

*sions Products Liability Litigation,* 327 F.Supp.2d 554, 558–559 (D.Md.2004), a related case decided two years later, Judge Blake granted plaintiffs' motions to remand, as the plaintiffs in those cases were seeking compensatory and consequential damages, something which plaintiffs in the earlier actions had not sought.

the Court determined that the artful pleading doctrine did not provide "a separate basis for the exercise of removal jurisdiction." *Id.* at 893.

As previously discussed above, the Court has determined in this case that plaintiffs' claims are not completely preempted by the FCA. Thus, because complete preemption does not apply, the Court finds that the artful pleading doctrine is not applicable in the instant case.

### E. Substantial Federal Question [6]

■ Cingular argues that its regulatory cost recovery fee is "the product of its compliance with significant federally-mandated programs arising out of the federal government's comprehensive regulation of wireless telecommunications." (Cingular's Suggestions, p. 26). Cingular argues that to allow plaintiff's petition to be resolved in the state courts would immerse them in an area reserved for the FCC's expertise and policy judgments, interfere or conflict with any investigation initiated in response to the NASUCA petition, lead to conflicting interpretations of the standards governing the propriety of and disclosures relating to the RCR fee and frustrate the federal government's goal of national uniformity. (Cingular's Suggestions, p. 27).

Sprint argues that because the complaints in *Milner, Campbell* and *Lang*

challenge authority conferred by federal law to impose the surcharges in question, a substantial federal question exists. Sprint states that to adjudicate the unjust enrichment and money-had-and-received claims, the Court must resolve substantial issues of federal law.

In *In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation,* 327 F.Supp.2d 554, the Court stated:

> The exercise of federal jurisdiction in the prior remand decision rested on the substantial federal question doctrine. This exception to the well-pleaded complaint rule applies only to the small class of cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331. . . . The doctrine permits removal where the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. . . . Even the presence of a substantial federal question will not justify removal unless *every* legal theory supporting the claim requires the resolution of a federal issue. . . . [I]f a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by

---

**6.** In *Little v. Purdue Pharma,L.P.,* 227 F.Supp.2d 838, 855 (S.D.Ohio 2002), the Court noted that, "[c]ontemporary decisions from the Supreme Court have fueled the question of whether the substantial federal question doctrine retains any vitality, casting a long shadow over the doctrine's effectiveness, if not altogether obliterating it." Additionally, in *Almond v. Capital Properties. Inc.,* 212 F.3d 20, 23 (1st Cir.2000), the Court noted that, "[t]he Supreme Court has periodically affirmed this basis for jurisdiction in the abstract ..., occasionally cast doubt upon it, rarely applied it in practice, and left the very scope of [the Substantial Federal Question]

concept unclear. Perhaps the best one can say is that this basis endures in principle but should be applied with caution and various qualifications." Cingular argues that the plaintiff's coalition improperly contends that the substantial federal question doctrine is a dead letter in the Eighth Circuit and cites to two Eighth Circuit cases for this proposition, *McNeill v. Franke,* 171 F.3d 561 (8th Cir. 1999) and *Berger Levee District Franklin County. Mo. v. United States,* 128 F.3d 679 (8th Cir.1997). However, it should also be noted that neither of these cases discussed the substantial federal question doctrine in the context of a complete preemption analysis.

an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist. *Id.* at 566–567 (internal quotations and citations omitted). Although defendants have argued that some of the claims such as unjust enrichment or money-had-and-received would present a federal question, as noted above, not "every legal theory supporting the claim requires resolution of a federal issue." Additionally, plaintiffs note that there have been several other courts which have found that unjust enrichment claims did not raise substantial federal questions. *See Gattegno v. Sprint Corp.,* 297 F.Supp.2d 372, 375–376 (D.Mass.2003); *Solomon v. Sprint Spectrum. L.P.,* No. 1:03 CV 1170 (N.D.Ohio Aug. 27, 2003).

Additionally, as the Court explained in *In re Wireless Telephone Radio Frequency Emissions Prods. Liab. Litig.,* 327 F.Supp.2d 554, the plaintiffs in that case were seeking compensation for physical injuries allegedly caused by exposure to emissions from their cell phones. The Court found that there was no private federal action available for their claims, thus the court found that the "defendants have not carried their burden of establishing removal jurisdiction under the substantial federal question doctrine, because they have failed to demonstrate the availability of a private federal remedy addressing the federal questions raised in the Morganroth complaints." *Id.* at 571. The Court also noted that "[s]everal courts have concluded that section 201(b) does not encompass claims for false advertising or consumer fraud, even when these claims are related to rates or billing practices." *Id.See also Moriconi,* 280 F.Supp.2d at 874, stating, "[t]he FCA fails, however, to provide aggrieved consumers of wireless services with any federal remedies for deceptive advertisement or billing." Thus, as in *In re Wireless,* as there is no federal remedy, there is no substantial federal question jurisdiction. Jurisdiction should be grounded in complete preemption and stated clearly in the FCA, and not based on a doctrine whose effectiveness and continued vitality is questionable. Thus, because the Court has determined that plaintiffs' claims do not depend on the determination of a substantial federal question, this doctrine does not provide a basis for removal jurisdiction.

## F. ALL WRITS ACT INJUNCTION

Having determined that the Court does not have jurisdiction over the remaining actions, the Court hereby **DISSOLVES** the All Writs Act Injunction entered by this Court on December 16, 2003.

## G. MISCELLANEOUS MOTIONS

Sprint's Motion for Enlargement of Page Limitations (Doc. # 311) is hereby **GRANTED**; Abraham Rappaport's Motion to Withdraw as Counsel is hereby **GRANTED** (Doc. # 318) and Plaintiffs' Coalition Motion to Exceed Page Limit (Doc. # 320) is hereby **GRANTED**.

## IV. CONCLUSION

The Court does not find that defendants have met their burden to demonstrate that these claims could have originally been filed in federal court, because the claims are not completely preempted and the allegations are not artfully pled and do not raise any substantial federal questions. Accordingly, as the Court finds that it has no federal subject matter jurisdiction, the Court hereby **REMANDS** the following cases:

*Hobson v. Cingular Wireless Corp,* (N.Ala.03–2934)(W.D.Mo.04–264); *Brewer v. Sprint International Communications Corp.,* (E.D.Ark. No. 03–934)(W.D.Mo.04–133); *Clinkscales, et al. v. AT & T Wire-*

*less Services, Inc.,* (N.D.Cal.03–4305)(W.D.Mo.03–1146); *Milner v. Sprint Spectrum, L.P.,* (M.D.Fla.03–1344)(W.D.Mo.04–51); *Prieto v. Cingular Wireless, LLC,* (N.D.Ga.04–13)(W.D.Mo.04–588); *Lang v. Sprint Corp.,* (N.D.Ill. No. 03–5682)(W.D.Mo.04–53); *Alport v. Sprint Corp.,* (N.D.Ill.03–6246)(W.D.Mo.04–62); *Franczyk v. Cingular Wireless LLC,* (N.D.Ill.03–6473)(W.D.Mo.04–265); *Sparks v. Sprint Corp.,* (N.D.Ill.03–8140)(W.D.Mo.04–134); *Benney v. Sprint Corp.,* (W.D.Mo.02–4269) and *Campbell v. Sprint Spectrum L.P.,* (W.D.Tenn.03–2438)(W.D.Mo.03–1093).

The Clerk of the Court is directed to mail a certified copy of this Order to the Clerks of the following courts as required by 28 U.S.C. § 1447(c):

Circuit Court of Jefferson County, Alabama; Circuit Court of Pulaski County, Arkansas; Superior Court of California for Alameda County; Circuit Court for Hillsborough County, Florida; Superior State Court of Floyd County, Georgia; Circuit Court of Cook County, Illinois; Circuit Court of Shelby County, Tennessee and the Circuit Court of Cole County, Missouri.